Good morning, Your Honor. May it please the Court, Tony Farmani on behalf of the panel and Mr. Poslof. Your Honor, Mr. Poslof, as you know, is serving a life sentence, eligible for parole at age 74, simply because he failed to register a second and temporary residence. When you look at the facts and circumstances of the case, well, I guess the first issue to overcome in this case is whether or not you're going to ignore this Court's decision in Richardson v. Vasquez, which granted relief to the same exact petitioner. And if you're going to ignore it, then I think it's worth repeating here. The question is whether we ignore that one or we ignore Nava. Pardon me, Your Honor? Whether we ignore that one or Nava. They say there are two unpublished mem dispos that seem to be pointing in opposite directions. Sure, they are. That's correct, Your Honor. But the difference, I think, there is a difference between these cases, Gonzales case, which is a published decision. That case is talking about a petitioner where they didn't change any residence, they didn't have a second residence. What they had was just simply failed to register or renew their registration, update their real year registration. We can ignore both Richardson and Nava, because unpublished dispositions have absolutely no precedential weight and very little persuasive ability as far as I'm concerned. That's correct, Your Honor. You can, but I think in this case it would be very difficult to do so. Why? Because if our rules say that we can ignore them, it wouldn't be difficult at all. I think Your Honor just mentioned a few minutes ago about justice, about compassion, that the law provides for that. In Vasquez, Your Honor, in Richardson, excuse me, in Richardson, the petitioner had changed his residence. For all practical purposes, he had changed. He had moved in with his girlfriend. Over here, that's not the case. Over here, in Pazzo. Well, that's a matter of opinion, I think, in this case, whether or not he had actually changed his residence. I mean, I know he said that he thought that if he only stayed there a certain number of days out of the week, he really wasn't living there. But that's, it's not quite the same. It's not quite the same, and I think it falls within the, you have different kind of cases. You've got the Gonzalez. Then you've got the case such as people versus Meeks, people versus Nicholson, similar cases. And those cases are where the petitioner or the defendant has basically changed his residence. We're not talking about a second residence. Then you've got Mr. Pazzo. As I understand what we've got here is that he now had two residences. He was convicted of having two, not failing to register the second residence. And that means then that, and he violates the statute by having two so long as he willfully fails to register at the second of the two places. But that distinguishes it to me in the terms of the interest the state has from someone who simply leaves the old residence, he's not there at all, comes to a new residence, doesn't register, and at that point the state really has no way of finding him except by accident. In your case, they do have a way of finding him because he's now living at two places. So this one sounds to me a little bit closer to Gonzales which is sort of the birthday registration where the premise of our written opinion, published opinion on Gonzales was well the state's going to be able to find him. So we don't see why the punishment, essentially a life term, is appropriate when we have something that's clearly a violation of law but the state is nonetheless able to locate this person. Well, as far as I can tell, the state would easily have been able to locate him because he's living in two places. This is not so much a question to you in terms of objecting to you, it's a highlight to the state as to where this is but I want to make sure that I'm understanding the underlying facts of this case properly. I agree with you 100 percent, Your Honor. In fact, you've done the right thing by looking at the factual circumstances of the offense, not just the statutory definition but the factual circumstances of the offense. Am I right in understanding that that's not contested, that is to say he is convicted of having two residences being registered only for one, the prior resident but not registering for the second? That's correct. Would the important factor here that the Court of Appeal when evaluating, the California Court of Appeal when evaluating the sufficiency of the evidence noted, specifically noted that it was a difficult question for them to determine whether he even had the intent, the actual knowledge. But they were faced with a jury verdict. Correct. And also taking a factor that he was actually going out there and doing the right thing. He was going out there and helping out his brother who was sick and his brother, interestingly enough, died, and it's not disputed directly, died as the verdict came down because he felt so responsible for this. The problem I have is not just that the state needs to be able to find the offender, the state also needs to be able to track the offender's activities at any given time. So if a convicted sex offender moves into a community without that community being made aware that that sex offender is there, that violates the state's interest just as much as if he leaves the first residence and they can't find him. So why isn't that a consideration in terms of the license? The fact that he's moved into a new community, the community has no idea he's there, the law enforcement officials have no idea he's there and therefore can't track his activities there. Why doesn't that support the decision? Well, I think the state's interest, there are two reasons why I think that that distinguishing factor between this case and Gonzalez is a distinction without a difference. Number one, Mr. Pazov didn't change his residence. He actually, his permanent residence was in Merced County. That's where he lived. He was under the impression that by going to another place, as if you were taking a vacation, you went to another place, that's the way he felt and the facts in the record fully support that. He didn't feel like he had to register unless he stayed at this place more than five working days and he made it a point. So how would the officials in a new city be aware that he was there so that they could keep an eye on him in terms of whether or not he's getting new victims in that new location? How would they know that? The answer to that question is they wouldn't, Your Honor. You're absolutely right about that. They wouldn't, except that that is not a determinative factor. That's just, if you will, a very small factor to take into account. Well, your argument is a good argument if we were a sentencing court, but we're limited in our review of state convictions. What Supreme Court decision is this California Court of Appeals judgment inconsistent with? Solemn, Your Honor. Solemn, I may be saying it wrong, but S-O-L-E-N. The three factors. We know the second and the third factor is just that you can't dispute those two. There's no question about that he satisfies, Mr. Pazos satisfies the first and two, the second and the third factor. The first factor, which is the gravity of the offense and the harshness of the penalty, when you compare those two together, and that relates to Her Honor's question earlier, which is what's the point? The fact that the State wasn't able to track Mr. Pazos down, how significant is that? It really isn't that significant because in order for you to determine the gravity of the offense, you have to look at the factual circumstance of the case, and then you look at the second part of that case, which is the harshness of the penalty. When you look at the harshness of the penalty here and take into account Mr. Pazos' prior convictions, it pales in comparison to the other cases where the courts have granted relief, including Gonzalez, including Richardson. I mean, in Richardson, although it's not a published decision, Richardson, the man had killed his own baby. He had committed sexual offenses. He had committed robbery. The court still found that this was a cruel and unusual punishment, and rightfully so, Your Honor. And similarly, in Gonzalez, you had robbery, you had rape and sexual molestation of a child. Well, Gonzalez was a birthday case, and this is a moving case. It's not a moving case. So there are two different cases. It's not a moving case. You're right. There's a distinguishing factor between Gonzalez and Mr. Pazos' case. One, in Gonzalez, he failed to update his registration within five working days following his birthday. Mr. Pazos did not move, however. He falls into this middle category where the California Supreme Court or the California Court of Appeals have never decided. There is no conflict between the California law versus Ninth Circuit law, as it stands today. Except for if you ‑‑ if Richardson was published, was in fact published, then you would have some conflict. Even then, I don't think you would have conflict, because all the cases, People v. Carmody, which granted ‑‑ which found it was a cruel and unusual punishment, People v. Nichols and People v. Meeks, which are the three major cases talking about this issue from the same court of appeal, I might add, these courts have never, ever decided on an issue that is similar to Mr. Pazos. That doesn't help you, though. If there is no case that's decided it, then you don't have anything to say that this is inconsistent or that it's so out of the pale that it violates the Eighth Amendment. If the Supreme Court of the United States, you're right, if the U.S. Supreme Court had decided, if we're talking about the U.S. Supreme Court, then you're right. But we're talking about the California Court of Appeals. The U.S. Supreme Court has come up with the three factors. They've applied that three factors consistently. And they've also come up with a clearly established law that proportionality, not just a method of punishment, proportionality is also within the ambit of the Eighth Amendment. Right. But the state court has determined that this sentence is the one that should be imposed. Not the California Supreme Court and not the California Court of Appeals on the set of facts. You're right. Did this case go through the California state system? You're right. This case did. This particular case. But even this Court of Appeal, unlike the other Court of Appeals in California, never, ever went through the three factors by the Supreme Court. It simply didn't do it. Well, but it decided that question. It just did so in a very, I don't know, about a page and a half. Absolutely. It never went through the fact. It came up with all the other things. That's neither here nor there for me. I mean, the California Court of Appeal addressed the question as to whether it was a longer opinion. It was very clear they addressed that decision, that question, and they decided it. The same thing could be said about riches. Well, of course. The same thing could be said about riches. Yeah. Why don't we, you're a little over time. Let's hear from the State and then we'll give you a chance to respond. Thank you. Good morning, Your Honors. May it please the Court.    I'm going to leave it to Deputy Attorney General Theodore Crockley to respond to it. There is no question that this sentence is a harsh sentence. The State is not going to dispute that. However, the question is, of course, is whether the State Court's decision denying Mr. Poslarf's cruel and unusual claim was either contrary to or an unreasonable application of U.S. Supreme Court authority. Let me ask you this. Do you think our decision in Gonzales is wrong? No, Your Honor. So you think Gonzales is correct in holding that a decision of the California Supreme Court on the birthday registration is an unreasonable interpretation of Supreme Court case law? No, Your Honor. Let me back up. Then you better back up and say you think Gonzales is wrong. I didn't let you finish your question. And I should have. Your Honor, with Gonzales here, Gonzales drew a line. And the State at that time argued that that line was improperly drawn. The State would still say that Gonzales should have given deference to the California State Court's decision that the failure to register the update, the annual, the birthday registration requirement, that that imposition of a three-strikes sentence based on that was not cruel and unusual. I see. So you do think that our decision on Gonzales is wrong? Yes, Your Honor. Okay. And I think that the U.S. Supreme Court has recently reminded us in several recent cases that, again, even if the court, this court or the court in Gonzales would have decided the case differently if it was the sentencing court or if it was the State court reviewing the sentence, the question is could any reasonable jurist disagree? And if so, then deference must be given to the State court's decision. So the fact that we're arguing here in the brief Senate argument which U.S. Supreme Court decision is applicable, is it Solem or is it Andrade or Ewing? They all are, of course. They all are, of course. But they, you know, the State would point this court to Andrade and Ewing where the triggering offense, the third strike, was a minor offense, yet the U.S. Supreme Court would not make a three strikes life sentence for these minor offenses. And the fact that, you know, we're here arguing which Ninth Circuit case should apply shows that reasonable jurists can disagree and that, therefore, deference must be given to the State court's decision. Well, the fact of the matter is Ninth Circuit authority is not our guiding star. It's the Supreme Court authority that we have to look to. And so Ninth Circuit authority just kind of gives us a guide as to where we should be looking, but we're really looking to the Supreme Court authority. Absolutely. And the Supreme Court has not weighed in on this particular issue. Although I think I'm not going to disagree. I think I'm not disagreeing with Judge Rawlinson. On the other hand, Gonzalez has already addressed the question as to whether or not it is an unreasonable interpretation of the Supreme Court case law for a birthday registration. And on that, I think we have to follow Gonzalez because Gonzalez has answered that question. You may disagree with it, but Gonzalez is binding law on us. If we had a birthday registration case, it would be easy. Exactly. But we don't have a birthday registration case. That's the question. So we have to look at Supreme Court authority on something other than the birthday registration case. Exactly, Your Honor. And so if Gonzalez drew the line, it drew the line on one side was the birthday registration requirement, which the Court in Gonzalez said was the kind of passive technical crime that shouldn't trigger a life sentence. But Gonzalez itself made the distinction between the second type of registration requirement that we have that Mr. Poslow violated. And that is the failure to register a new or a second address. And even though he also remained at least part-time at his original address, the failure here goes to the very heart, the very reason why there is the registration requirement. So law enforcement will know where to find the registry. So even if he has two addresses, if he's only registered one of those addresses, then even if the law enforcement was not looking for the registrant actively at the time, the policy concern is they need to know where he is at any given time. Let me ask you this in terms of just the operation of the California statute. What if instead of having a house that he had bought in his own name, and I'll assume he's telling the truth, may or may not have been entirely true, actually, but assume he's telling the truth, he's never stayed there for more than five days at a stretch. Maybe, maybe not. Let's assume that he doesn't buy a house, but rather he goes up and stays with his brother four days a week for a period of a couple of months. Would he have been required to register that he's staying with his brother several days a week? Well, the jury in this case decided so. No, no, no. I'm asking you a different case. I'm not asking you the case that was the case in front of him. I'm asking you a different case. He doesn't buy a house. He has no ownership here. Rather, he comes up and he stays with his brother four days a week for a couple of months while he helps his brother at the shop. Would that have been a violation of the statute? I would say yes. Because? Because, again, he is in a second residence, even though, again, there was some dispute both at this trial and in the hypothetical here. When does the registration requirement kick in? You know, five consecutive days, five working days, five court days, or whichever. That was the dispute in this case as well. But whether it was in this case where he's building a house or fixing up for his mother to help his brother or actually staying with his brother, what the California law and what the jury looks to is, again, the purpose of this is can law enforcement find him? Should the community be made aware that there's a sex offender? So your view is even though he doesn't own, so long as he's coming up fairly regularly over a couple of months, I don't know how long he was staying there. But that would require reregistration. Absolutely. Ownership of the actual ownership or title of the property doesn't matter. Right. Renting and, you know, subletting. Right. And, again, it's because looking at the very purpose of this registration requirement, to require so the community would be on notice there's a sex offender in their midst. So law enforcement, on the chance that they needed to find this person, would be able to know the places where he was. What's the mechanism by which there is notification of the community that there's a sex offender living there or registered to an address? Well, the usual process when someone registers would register with either the county sheriff or the local police. And that, my understanding, would be made accessible to the public either on a website or someone could physically go and look up registration requirements. It's public information. It's public information. And the fact that a person required to register as a sex offender may be spending a significant portion of time on residence in a different county where law enforcement doesn't know he's there, the community doesn't know he's there, is the very type of concern that even the U.S. Supreme Court in Doe v. Smith in 2003 recognized the very important public policy implications that are triggered. Now, as I understand it, under California law, there are certain places close to schools, for example, where sex offenders are not permitted to live. Is that right? That is correct, Your Honor. And that's kind of always evolving, but you're correct. Do we know whether he would have even been permitted to live in the house where he was living? That is not clear from the record, Your Honor. It's unclear whether this residence he was fixing up was near a school or a playground or anything like that. It just wasn't developed in the record. That wasn't charged. That was not that part charged. It was simply the fact whether he was required to register this second or temporary address. And so, Your Honor, just in conclusion, I think it's important to look to U.S. Supreme Court, the recent cases that have emphasized the deference that must be given to state court decisions. And it's from Richter. As a condition for obtaining habeas corpus relief from federal court, a state petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. And, Your Honors, at a minimum, there's the possibility here of fair-minded disagreement. And that alone requires deference to be given to the state court's decision. Unless the court has any questions, I'd be happy to submit. I have a related question. There was some mention made that he was living with his 16-year-old daughter, or his 16-year-old daughter was living with him. Was that of any significance in the case? It was, Your Honor. In this case, the police originally, how the police were notified, they came to the residence actually looking for someone else. And they ran Mr. Pozlov's name, saw that he was required to register, and in fact told Mr. Pozlov if he's going to be spending some time there to register. A month later, they came back. Mr. Pozlov was still there, had some mail addressed to him, some pharmacy prescriptions addressed to him at that address. And also, in the record, there was indication that there was clothing of a teenage girl in the room, and some record that he had a 16-year-old daughter. So was he not allowed to be around minors or anything? Why was that important? Important insofar as showing whether, again, for the jury, whether he intended to, you know, reside at this address. In fact, if he had clothing from his daughter who he visited and visited him there, that probably gave more credence to the jury that, in fact, this was at least a second residence for Mr. Pozlov. Yes, it was not a question of he was not permitted to live with the daughter. It was rather evidence supporting the idea that he'd moved there actually more or less, I don't want to say full-time, but more than he was saying. Certainly, Your Honor, because if he was only there fixing up something, it would be less likely he would have his children's clothing there. So I don't believe there was any prohibition on him relating to minors or things like that. But, again, that was one further piece of evidence to support the jury's finding in this case. Thank you, Your Honor. Thank you. You've gone over time, but why don't we give you a minute to respond. And you just say what you need to say. Okay, Your Honor. I just want to say this is not a case about sufficiency of the evidence. Mr. Pozlov was convicted of failing to register, and he served time well beyond the amount of time that he should have served. And he's still serving that time. He's fought very hard to his – he's had – before I was appointed, Your Honor, he had 192 entries in the district court. The man is fighting for his life. He never committed this crime willfully, which is one of the factors this Court is permitted to take into consideration under Supreme Court law. He's never – Well, I'm afraid you can't say that because a requirement for the conviction is that it be willful. And the jury held that – found that it was willful. Correct, Your Honor. But he didn't – he wasn't doing it to evade my – I apologize for not being clear on that point. He wasn't doing it to evade officers. It wasn't as if people were looking around, authorities were looking around for Mr. Pozlov and just couldn't locate him. They went there just by chance. Mr. Pozlov happens to be the unluckiest man on earth probably. I do want to end with a dissenting opinion, a quote from a dissenting opinion from People v. Meeks, Justice Sims, and he said, What we're doing sends 52-year-old dying man to state prison for 27 years to life. What has become of our society? What has compassion become a dirty word in the law? There can be no justice without a fair measure of compassion in an appropriate case. And I think that some years from now, law professors and law students will read this case, will ask, what on earth were they thinking? I think the same principle applies here. You're not going to find a U.S. Supreme Court case that's going to say right on point, that's going to be right on point and says, yeah, under these facts, this court needs your punishment. You do, however, have guiding principles to grant relief. You do have Gonzalez and you certainly have Richardson. Thank you. Thank you both sides for your arguments. Pozlov v. Yates now submitted for decision.
judges: Goodwin, Fletcher, Rawlinson